**United States District Court**
**District of Massachusetts**

```
                                    )
Christopher Dodge,                  )
                                    )
          Plaintiff,                )
                                    )
          v.                        )    Civil Action No.
                                    )    21-10240-NMG
Mevion Medical Systems, Inc.,       )
et al.,                             )
                                    )
          Defendant.                )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims of plaintiff Christopher Dodge ("Dodge" or "plaintiff") against his former employer Mevion Medical Systems, Inc. ("Mevion"), its president James Meng ("Meng") and its treasurer Tianning Yu ("Yu") (collectively, "defendants"). The claims stem from defendants' alleged failure to recompense Dodge, who was partially paid on commission, for a sale that was completed only after he was terminated. In their answer to the original complaint, defendants allege a variety of counterclaims regarding Dodge's compensation and his post-termination activity.

Both parties have filed "partial motions" to dismiss some claims/counterclaims of their opponent and, in response to a

"partial motion," the Court is tempted to issue a partial decision which would certainly save time and effort. Upon reflection, the Court deems it more prudent, however, to issue a complete decision and suggests that, in the future, counsel file complete motions, even if what they seek is partial relief.

## I.  **Background**

As set forth in the complaint, Dodge was hired by Mevion in August, 2016 as the company's field vice president for business development and customer finance. Mevion is incorporated in Delaware, with its principal place of business in Littleton, Massachusetts. The company is engaged in the research, development and sale of proton therapy machines used to treat cancerous tumors throughout the body.

Dodge's initial employment agreement sets forth the terms of his employment, including the structure of his compensation, which included three components: (1) salary, (2) recoverable draw and (3) commissions for the sale of Mevion products. According to the 2016 agreement, Dodge was entitled to a commission on a sale only after the following conditions were met: (1) a binding agreement was fully executed between Mevion and the customer without contingencies, (2) Mevion received a copy of that agreement and (3) Mevion obtained a non-refundable down payment of at least One Million Dollars from the customer.

That agreement was replaced in March, 2019 with a new employment agreement that had substantially the same terms, both concerning the structure of Dodge's compensation and the prerequisites for receiving a commission.

The March, 2019 iteration of Dodge's employment agreement was, however, short-lived.  In July, 2019, it was once again replaced, this time with notable changes.  The July, 2019 version altered Dodge's compensation and limited the components thereof to salary and eligibility for a discretionary bonus. Dodge accepted that agreement but, according to the complaint, only in reliance that Mevion would also offer him the opportunity to earn commissions.  Mevion subsequently did so. In March, 2020, Meng sent Dodge a draft sales commission plan and, in May, 2020, Meng emailed Dodge, as well as other Mevion staff, notice that the company was "going to work within the guidelines of this commission program for 2020."

That sales commission plan described terms different from those contained in Dodge's prior employment agreements.  In relevant part, the commission plan did not set forth the prior prerequisites but rather stated that "[c]ommission is paid based on the milestone payment schedule with the customer".  The plan also specified that a terminated employee would continue to receive commission payments so long as the employee had been

terminated without cause.  The plan described the formula by which the commission was to be calculated and distributed among Mevion employees, providing that, "[i]f senior sales (SS) has developed the account...the primary SS person gets 40% of the total commission."

Dodge alleges that, before his termination on November 18, 2020, he had effectively sold Mevion's product to Atrium Health ("Atrium"), a healthcare network based in Charlotte, North Carolina.  In his complaint, Dodge asserts that Mevion employees are prepared to testify that Dodge was substantially, if not entirely, responsible for the sale to Atrium, which resulted in an initial milestone payment of $4.5 million in December, 2020. The sale, as described in the complaint, was the result Dodge's efforts over several years to develop a relationship with Atrium executives.  Dodge, who was terminated without cause, claims that he is entitled to receive a commission based upon that initial payment and others.

Dodge's complaint asserts four claims against defendants: violation of the Massachusetts Wage Act ("MWA"), M.G.L. c. 149, § 148, against all defendants (Count I) and breach of contract (Count II), breach of implied covenant of good faith and fair dealing (Count III), and unjust enrichment (Count IV) against Mevion.

In their answer, defendants declare a variety of
affirmative defenses, as well as counterclaims.  They
counterclaim for breach of contract (Count I), unjust enrichment
(Count II), breach of restrictive covenant agreement (Count
III), breach of duty of loyalty (Count IV), misappropriation of
confidential information and trade secrets (Count V), violation
of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. (Count
VI), and tortious interference with contractual relations and
prospective advantageous relations (Count VII).  Those
counterclaims emanate from Dodge's activities after his
employment with Mevion ended.

Pending before the Court are cross motions to dismiss.
Defendants seek to dismiss plaintiff's claim for violations of
the MWA (Count I) on the ground that the commission allegedly
owed is not wages and the statute invoked is thus inapplicable.
Plaintiff correspondingly seeks to dismiss defendants'
counterclaims for breach of a restrictive covenant (Count III)
and breach of duty of loyalty (Count IV) by asserting that the
July, 2019 agreement materially changed the terms of Dodge's
employment such that the prior employment agreements, upon which
the subject obligations are based, were void at the time of his
termination.

## II.  __Motion to Dismiss__

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the inquiry required focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.  The assessment is holistic: "the complaint should be read as a whole, not parsed piece by piece to determine whether

each allegation, in isolation, is plausible". <u>Hernandez-Cuevas</u> v. <u>Taylor</u>, 723 F.3d 91, 103 (1st Cir. 2013), quoting <u>Ocasio-Hernandez</u>, 640 F.3d at 14.

**B. <u>Application</u>**

**1.   Defendants' Motion to Dismiss**

The purpose of the MWA "is to protect employees and their right to wages by requiring employers to pay employees their wages in a timely fashion." <u>Parker</u> v. <u>EnerNOC, Inc.</u>, 484 Mass. 128, 132 (2020) (internal quotations and citations omitted).  To advance that purpose, the statute applies to commissions "when the amount of such commissions...has been definitely determined and has become due and payable to such employee." M.G.L. c. 149, § 148.  Defendants argue that because the commission that Dodge seeks was not definitely determined and due and payable at the time of his termination, it is not subject to the statutory protection of the MWA.

That logic, although ostensibly based upon statutory language, was soundly rejected by a recent decision of the Massachusetts Supreme Judicial Court in <u>Parker</u>, 484 Mass. at 135.  In that case, the court made clear that neither the statutory language nor precedent establishes:

> a categorical rule that commissions that do not meet those conditions are considered not to be wages under the act; instead, the clause provides that the failure

to pay commissions when they are definitely determined
and due and payable is one way to violate the act.

Id. at 135 (citing Weber v. Coast to Coast Med., Inc., 83 Mass.
App. Ct. 478, 482 (2013)).  Defendants' attempt to limit the
scope of that reasoning to the circumstances at issue in Parker,
in which a jury found that the relevant employer terminated an
employee in violation of the anti-retaliation provisions of
Mass. Gen. L. c. 149, § 148A and, absent the retaliatory
discharge, the employee would have earned the commission without
doing anything more, is unconvincing.  Nothing in the language
of Parker suggests the narrow reading proposed and defendants'
argument is thus discounted.

Moreover, Dodge has asserted facts sufficient to allege
that the commission he is purportedly owed falls within the
Parker court's broad definition of the term "wage" for purposes
of the MWA.  Noting that the Act does not define the term, the
Supreme Judicial Court has defined a wage as:

a pledge or payment of usually monetary renumeration
by an employer especially for labor or services

and determined that it could include post-termination
renumeration, such as commissions, in certain circumstances.
Parker, 484 Mass. at 135, n.11 (quoting Webster's Third New
International Dictionary 2568 (1993)).  Here, in contrast to the
circumstances in Parker, the commission allegedly owed to Dodge

was not conditioned on continued employment.  Mevion's 2020
sales commission plan unambiguously provided that:

> If the employee has been terminated without cause by
> Mevion, commission payout will continue as if this
> employee were still employed.

Based upon that language, as well as the specification in
the commission plan that the Mevion employee who "developed the
account" is owed a commission and Dodge's assertion that he
"developed" the Atrium account, plaintiff has pled facts
sufficient to contend that the commission he now seeks is a
"wage" under the MWA.  Dodge has set forth facts sufficient to
withstand defendants' motion to dismiss.

Defendants' second argument that Dodge failed to plead
facts sufficient to allege that Mevion terminated him for the
purpose of depriving him the relevant commission is inapposite
to the claims at issue.  None of the causes of action pled
necessitates an analysis of the intent with which Mevion
terminated Dodge and the prior reasoning of the Court does not
rely upon that assertion.  The Court need go no further.

## 2.    Plaintiff's Motion to Dismiss

Plaintiff, in turn, seeks dismissal on two of defendants'
counterclaims.  Dodge contends that the claims, which are based
upon the non-compete and non-solicitation obligations of the

August, 2016 employment agreement, are void because the July,
2019 agreement materially changed the terms of his employment.

The material change doctrine under Massachusetts law
provides that:

> Each time an employee's employment relationship with
> the employer changes materially such that they have
> entered into a new employment relationship[,] a new
> restrictive covenant must be signed.

Lycos v. Jackson, 2004 WL 2341335, at *3 (Mass. Super. Ct. Aug.
25, 2004); see Rent-A-PC v. March, 2013 WL 2394982, at *2 (D.
Mass.  May 28, 2013).  Changes such as a promotion to a new
position, an increase in salary or a conferral of additional
responsibilities can be evidence of a material change in the
employment relationship. Lycos, 2004 WL 2341335, at *3; see also
NuVasive, Inc. v. Day, 954 F.3d 439, 444 (1st Cir. 2020), and
cases cited.

The Court has found no case in which a similar question has
been resolved at the motion to dismiss stage, and plaintiff
cites none.

> [T]he question of whether any changes in the
> employment relationship would be sufficiently material
> to require execution of a new agreement is not evident
> from the pleadings, but rather would require factual
> development through discovery.

MOCA Sys., Inc. v. Bernier, No. CIV.A. 13-10738-LTS, 2013 WL
6017295, at *4 (D. Mass. Nov. 12, 2013).  As such, the question
is unripe at the current stage of litigation because, in ruling

on a motion to dismiss, "a court should not decide questions of fact." <u>Roeder</u> v. <u>Alpha Indus., Inc.</u>, 814 F.2d 22, 25 (1st Cir. 1987); <u>see</u> <u>Agero Admin. Serv. Corp.</u> v. <u>Campolo</u>, 366 F. Supp. 3d 170, 174 (D. Mass. 2019) ("Assuming, <u>arguendo</u>, that the enforceability of the non-compete provision hinges on whether there was a material change in [defendant's] employment terms, significant fact issues remain that cannot be decided at this stage.").

**ORDER**

For the foregoing reasons, defendants' motion to dismiss (Docket No. 42) and plaintiff's motion to dismiss (Docket No. 46) are **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 15, 2021